[Civil No. 2251.   Filed March 27, 1925.]

[234 Pac. 820.]

# E. A. TOVREA & COMPANY, a Corporation, Plaintiff and Appellant, v. JOHN DEGNAN, Defendant; ARIZONA PACKING COMPANY, a Corporation, Garnishee and Appellant; CITY NATIONAL BANK, Intervener and Appellee.

1. BILLS AND NOTES—DRAWEE OF NONACCEPTED DRAFT NOT LIABLE THEREON.—Under Civil Code of 1913, paragraph 4272, the drawee of a draft who refused to accept it is not liable thereon.

2. BANKS AND BANKING—INTENTION MAY OVERRIDE RULE THAT DRAFT CASHED BY BANK BECOMES ITS PROPERTY.—The intention of the parties, as reflected by the transaction, may override general rule that ownership of draft cashed by a bank becomes its property.

3. BANKS AND BANKING—EVIDENCE HELD TO SHOW THAT BANK NOT OWNER OF DRAFT ENTITLING IT TO SET UP CLAIM AS AGAINST GARNISHMENT PLAINTIFF.—Where bank, made payee of draft, credited drawer's creditor with the amount thereof on its books, and treated it as a cash item, and as such forwarded to another bank for collection, but, on being notified of drawee's refusal to accept draft, immediately charged it back to such creditor, thus rescinding its purchase of the draft, *held* that thereafter drawer was owner of draft, constituting a debt against drawee, and in garnishment proceedings against drawer as defendant, and against drawee as garnishee, bank was not entitled to funds in garnishee's hands as alleged owner of draft, as against garnishment plaintiff.

See (1) 8 C. J., p. 297, § 468.   (2) 7 C. J., p. 635, § 314.   (3) 7 C. J., p. 635, § 314.

APPEAL from a judgment of the Superior Court of the County of Maricopa.   M. T. Phelps, Judge. Judgment reversed and cause remanded with directions.

1. See 3 R. C. L. 1301.   2. See 3 R. C. L. 524, 525.

Messrs. Kibbey, Bennett, Gust, Smith & Lyman, for Appellants.

Messrs. Alexander & Christy and Mr. Hess Seaman, for Appellee.

ROSS, J.—This is a garnishment proceeding, and involves the question as to which is entitled to the fund, the payee of a nonaccepted draft drawn by a debtor, or the garnishment creditor of the debtor. The facts, as we gather them from the pleadings and the evidence, are about as follows:

On September 13, 1922, John Degnan, a resident of Texas, sold to the Arizona Packing Company, a corporation of Phoenix, Arizona, two carloads of beef cows at four and one-half cents per pound, f. o. b. cars at El Paso, less the freight from that point to Phoenix. On September 19th Degnan shipped cows, consigning them directly to the Arizona Packing Company, and on the same date he went to the City National Bank of El Paso and drew a demand draft in favor of such bank against the Arizona Packing Company for the amount he estimated to be due him after deducting the freight, and attached to draft what is called a "weight bill" upon which was written the number of cows sold, their weight in pounds multiplied by four and one-half cents, the total sale price and freight reduction, showing a balance due to Degnan of $1,858.78, the amount of the draft. Admittedly, the draft was excessive in the sum of $30.95, owing to the freight being that much more than Degnan had figured it. There was also due from Degnan to the packing company, growing out of previous similar transactions, a balance of $61.40.

Degnan had borrowed the money to pay for cattle from the Tri-State Cattle Loan Company, an El

Paso concern. At the time the City National Bank took draft from Degnan it credited the account of the Tri-State Cattle Loan Company with the face value of draft, and on the same day transmitted it to the Phoenix National Bank for collection. The latter bank received draft on September twenty-first and telephoned the Arizona Packing Company that it had such draft for collection. The packing company refused to pay draft, because it was in excess of the amount it owed Degnan in the sum of $92.35, and because it had already been served with a writ of garnishment in this proceeding. On the 29th of September the garnishee packing company answered the writ of garnishment, admitting an indebtedness of $1,773.02 at the time of the service of writ, but said nothing about the draft having been presented. The City National Bank, after obtaining the permission of the court, filed its petition in intervention, setting forth, in the main, the above facts except that it is therein stated that Degnan delivered draft to the Tri-State Company to repay it for loan, and that the Tri-State Company thereupon deposited draft to the credit of its checking account in the City National Bank.

Degnan, in his deposition, said:

"I assigned the debt to the City National Bank of El Paso, Texas, by drawing a draft against the Arizona Packing Company in payment of the debt I owed for the purchase of the cattle. It was a complete and unconditional assignment."

The vice-president of the City National Bank in his deposition said:

"The draft was turned over to me by Mrs. McMahon, credited to the account of the Tri-State Cattle Loan Company, which draft was sent as cash through the regular channels, and was returned unpaid protested, and we hold a bill receivable up to date covering the said item which remains unpaid."

This witness attached to his deposition a copy of the ledger sheets Nos. 5 and 6, which show that the Tri-State Company was credited with $1,858.87 on September 19th, and on September 22d debited with $1,858.87 plus $3.50, being the amount of protest fee.

The plaintiff, E. A. Tovrea & Co., instituted this suit in the superior court of Maricopa county against the said John Degnan to collect a past-due note given by him to plaintiff for the sum of $1,628.41, and on the twenty-first day of September, 1922, caused to be issued out of said proceeding a writ of garnishment, which was served upon the Arizona Packing Company some time that day, and before the Phoenix National Bank notified the packing company that it had for collection a draft issued in favor of the City National Bank of El Paso by the debtor, Degnan. (Hereafter we shall refer to E. A. Tovrea & Co. as plaintiff, Degnan as defendant, the Arizona Packing Company as garnishee, and the City National Bank of El Paso as intervener.)

Upon a trial before the court, judgment was entered in favor of the intervener and against the garnishee for $1,858.87, the amount of the draft, and against the garnishee and the plaintiff for costs. This appeal is prosecuted by plaintiff and the garnishee, and it presents the question as to which of the claimants, the plaintiff or the intervener, is entitled to the fund in controversy.

It is the contention of the plaintiff and the garnishee that no judgment should have been rendered in favor of the intervener against the garnishee, and, at all events, not for $1,858.87, since the undisputed evidence was that it owed Degnan only $1,766.52.

The garnishee, having refused to accept draft, is not liable thereon. Under the Negotiable Instruments Law (paragraph 4272 of the Civil Code of

1913), the nonliability of drawee to payee or assignee of a draft or bill of exchange is provided for unless and until he accepts the draft. The intervener recognizes this as settled, and does not declare on draft, but asserts that such instrument with the weight bill attached was in law an assignment of the debt owed by garnishee. The question as to whether the payee of a draft, drawn generally, may under any circumstances be permitted to treat it as an assignment of the debt owed by the drawee, is one upon which the courts do not agree. 5 C. J. 916, § 81. This work states that the great weight of authority is against it. In some jurisdictions, however, a draft or bill of exchange may be shown to have the effect of an assignment of the drawer's claim against the drawee. Two of the more recent cases holding the latter view are *First Nat. Bank* v. *Rogers-Amundson-Flynn Co.,* 151 Minn. 243, 186 N. W. 575; *Taylor* v. *Dollins,* 205 Mo. App. 246, 222 S. W. 1040.

If the evidence showed the intervener to be the owner of draft, it would be necessary for us to decide between these different views, but, as we construe the record, if the intervener ever became the owner of draft, it was not such owner at the time the garnishee filed its answer or at the time of the trial. The fact that the intervener credited the account of the Tri-State Company upon its books with the face of the draft at the time the draft was given to it by defendant, and thereupon treated it as a cash item, and as such forwarded it to the Phoenix National Bank for collection, if it stood alone, would doubtless support the contention of the intervener. This all happened on the 19th of September. When later the intervener was notified of the refusal of the garnishee to accept draft, it immediately charged the item back to the Tri-State Company. In other words, it recalled the consideration that it had paid

for the draft. This it had the right to do, neither Degnan nor the Tri-State Company objecting thereto.

Recently we had a case involving a course of conduct similar to this. *Davies & Vincent* v. *Bank of Commerce, ante,* p. 276, 232 Pac. 880. In that case the Bank of Commerce, under an arrangement with Davies & Vincent, cashed the latter's drafts against a drawee, resident of El Paso, Texas, and extended the privilege to Davies & Vincent of checking against the credit, with the understanding that if for any reason the drafts were not paid, the advances might be charged back against their account; and under such state of facts we held the drafts remained the property of Davies & Vincent.

The mere fact that the intervener treated the transaction as a cash one would not necessarily, therefore, transfer the draft to it as owner, and the way intervener acted after learning the draft was dishonored is a very strong circumstance tending to show that it, like the Bank of Commerce in the above case, took the draft for collection and not as owner.

The intention of the parties, as reflected by the transaction, may override the general rule to the effect that the ownership of draft cashed by a bank becomes its property. If, as is contended, the intervener bought draft outright from defendant by paying his debt to the Tri-State Company, it rued the bargain when the draft was dishonored, and asked and received a return of the purchase price from the Tri-State Company, re-establishing the *status quo ante;* that is, defendant, Degnan, again became the debtor of the Tri-State Company and was reinstated to the ownership of the account against the garnishee. The intervener could not repudiate the purchase, recover the consideration, and at the same time hold the property in draft. It was either the owner or

not the owner, and the whole transaction indicates
that it never intended to assume the burden and risk
of ownership and was acting only in the capacity of
agent of defendant, Degnan, to collect draft, and
in the meantime gratuitously extending to him a
temporary credit to cover his debt to the Tri-State
Company.

The intervener makes the suggestion that the
transaction should be regarded as an equitable as-
signment to it of the funds in the garnishee's hands
for the benefit of the Tri-State Company, and that
its place in the suit be treated as that of a trustee
of such company, with the power and right to collect
the debt for its benefit. From what we have said,
it is evident if the intervener holds any trust rela-
tion in connection with draft it is with the defendant,
Degnan. After rescinding its contract of purchase
and sale, if there ever was such, the ownership of
draft reverted to Degnan. If thereafter he chose
to leave draft with the intervener bank for collection,
its acts to accomplish that purpose would be as his
agent and for his use and benefit.

The plaintiff and the garnishee call attention to
the fact that the intervener had in its possession at
the time of trial the draft and also a bill receivable
covering it up to that date, and state that this shows
the Tri-State Company is not, if it ever was, de-
pending upon draft or the funds in the hands of
. garnishee as a source of payment of its claim against
Degnan, but has secured its debt in another and dif-
ferent way. The evidence is silent as to who placed
the bill receivable with the intervener or whose ob-
ligation it is, but we can see no occasion for the
Tri-State Company to have done so because it owed
nothing to the intervener, or to Degnan, but is the
only creditor of the three interested parties in El
Paso, and Degnan was the only debtor among them,

and the only one, apparently, owing an obligation to furnish security for debt. But however that may be, we think the evidence quite clearly shows that defendant, Degnan, was the owner of the debt against the Arizona Packing Company, garnishee, at least after September 22, 1922, the date the intervener rescinded its contract of purchase of draft, if not before, and that he continued to be such owner up to the date of the trial. That being true, the garnishment plaintiff was entitled to judgment against the garnishee.

It follows that the judgment in favor of the intervener was erroneous and unsupported by the evidence, and should be reversed. It is accordingly so ordered, and the case is remanded, with directions that proceedings not inconsistent with this opinion be had.

McALISTER, C. J., and LOCKWOOD, J., concur.